**GARLAND & MASON, L.L.C.**
**Manalapan Corporate Plaza**
**195 Route 9 South, Suite 204**
**Manalapan, NJ 07726**
**Ph:  (732) 358-2028**
**Fx:  (732) 358-2029**
**Email:  gary@garlandmasonlaw.com**
**Attorneys for Plaintiff**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **SECURUS DIRECT, L.L.C.**, a Delaware Limited Liability Company, | : : : | Civil Action |
| Plaintiff, | : : | Docket No. |
| vs. | : : : | **COMPLAINT AND JURY DEMAND** |
| **REHG GROUP, INC.**, a Georgia Corporation, | : : : | |
| Defendant. | : : | |

Securus Direct, L.L.C., the above-captioned plaintiff ("Securus"), with a principal place of business located at 1070 Route 34, Suite S, Matawan, Monmouth County, New Jersey, by and through its attorneys, Garland & Mason, L.L.C., and by way of complaint against Rehg Group, Inc., the above-captioned defendant, alleges and says as follows:

### PARTIES AND JURISDICTION

1. Securus is a limited liability company formed pursuant to the laws of the State of Delaware, with its Certificate of Formation having been duly filed on July 9, 2009 with the State of Delaware, Secretary of State, Division of Corporations.

1

2. Securus's principal place of business is located at 1070 Route 34, Suite S, Matawan, Monmouth County, New Jersey.

3. Securus is an insurance marketing organization that is primarily in the business of marketing and selling final expense life insurance and indexed universal life insurance.

4. Defendant, Rehg Group, Inc. ("Defendant"), is a corporation formed, existing and operating pursuant to the laws of the State of Georgia.

5. Defendant's principal place of business is located at 1355 Terrell Mill Road, Building 1482, Suite 100, Marietta, Georgia.

6. Defendant provides custom lead generation programs for national insurance companies, agencies and independent marketing organizations which sell, *inter alia*, final expense insurance products.

7. This Court's jurisdiction over Defendant is proper in that, pursuant to a certain Agreement for Final Expense Lead Generation Program, discussed in more detail below, executed by and between Securus and Defendant, the parties have an on-going business relationship and Defendant has engaged in systematic and intentional contacts with the State of New Jersey as part of that business relationship.

8. Securus executed the Agreement for Final Expense Lead Generation Program in New Jersey.

9. Defendant's acts and omissions, as described and complained of herein, have directly resulted in financial damage to Securus while conducting business within the State of New Jersey.

10. Defendant's employees, agents, representatives and members of its executive team traveled to New Jersey and participated in meetings with Securus executives at Securus's Matawan, New Jersey business location.

11. Defendant utilized electronic mail for the purpose of delivering leads to Securus through DropBox.

12. This Court has subject matter jurisdiction over this action pursuant to 28 *U.S.C.* §1332. The parties are diverse and the amount in controversy exceeds the threshold amount.

13. Venue is proper in this district pursuant to 28 *U.S.C.* 1391(a).

## COUNT 1
### (Breach of Contract)

14. Securus incorporates each and every allegation contained in paragraphs 1 – 13 hereof as though fully set forth at length herein.

15. On or about January 28, 2015, Securus and Defendant executed a certain Agreement for Final Expense Lead Generation Program (the "Agreement").

16. The purpose of the Agreement was to define "a direct marketing program for the purpose of generating Final Expense leads for Securus."

17. The Agreement contained certain "program parameters," such as demographic criteria for age and income, which were defined in a Fee Schedule attached to the Agreement and used for targeting final expense prospects.

18. The Fee Schedule attached to the Agreement defined the age parameters as 50 – 83.

19. The Fee Schedule attached to the Agreement defined the income parameters as $0.00 - $40,000.

20. Securus dictated the specific age and income parameters in order to meet its anticipated pool of prospects for its final expense insurance products.

21. Defendant breached the Agreement by, *inter alia*, generating and charging Securus for leads which were outside the defined age and income parameters.

22. As a direct result of Defendant's breach, Securus has been damaged.

**WHEREFORE**, Securus hereby demands judgment against Defendant for:

a. consequential damages;

b. incidental damages;

c. costs of suit and attorneys fees; and,

d. such other and further relief as the Court may deem just and proper.

### COUNT 2
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

23. Securus incorporates each and every allegation contained in paragraphs 1 – 22 hereof as though fully set forth at length herein.

24. The Agreement contained an implied covenant of good faith and fair dealing pursuant to the common law of the State of New Jersey.

25. Defendant breached said implied covenant of good faith and fair dealing.

26. By reason of said breach, Securus has been damaged.

**WHEREFORE**, Securus hereby demands judgment against Defendant for:

a. consequential damages;

      b.      compensatory damages;

      c.      punitive damages;

      d.      costs of suit and attorneys fees; and,

      e.      such other and further relief as the Court may deem just and proper.

### COUNT 3
### (Fraud)

27. Securus incorporates each and every allegation contained in paragraphs 1 – 26 hereof as though fully set forth at length herein.

28. For the purpose of inducing Securus to execute the Agreement, Defendant represented to Securus that it would strictly adhere to the age and income parameters provided by Securus when generating and charging Securus for the generation of leads.

29. Defendant knew that the income and age parameters were important to Securus's business model and to its ability to convert leads into actual sales.

30. Defendant further knew that Securus represented to its agents that the leads Securus would be providing to them (leads generated by Defendant) would specifically target these income and age parameters.

31. The income and age parameters are important because prospects outside of these parameters have less of a need for the type of final expense/burial policies which Securus agents sell.

32. The final expense/burial policies which Securus sells are underwritten very liberally and, as such, provide less coverage for more money as individuals with more impairments are blended in with the healthier policyholders.

33. More affluent individuals are typically not interested in purchasing these types of final expense policies because they already have something in place through regular distribution channels.

34. Thus, even when a more affluent individual – outside of the age and income parameters fixed by Securus – returns a lead card, once the agent begins the sales presentation, there is a reduced level of interest because they typically have a less expensive policy, with similar or better benefits, already in place.

35. For the purpose of further inducing Securus to execute the Agreement, Defendant represented that it would not re-sell or double-sell to any of Securus's competitors leads which were generated and charged to Securus.

36. Such representations are critical, and inherent, in any lead generation business relationship between an insurance marketing organization and a lead generation service to protect the integrity of the business relationship and the leads.

37. Upon information and belief, Defendant double-sold leads generated for and charged to Securus.

38. Several Securus agents reported that in following up on lead cards, they visited homes only to learn that another agent – unaffiliated with Securus – had already visited the homeowners to pitch final expense policies with other carriers.

39. In one (1) case, the prospect showed the Securus agent the lead card that was left behind, identifying a female agent who was not associated with Securus and who had visited the prospect prior to the Securus agent arriving at the prospect's home. The lead card was the identical lead card that the Securus agent had obtained through Securus (and which Securus

purchased from Defendant), right down to the bar code identifier on the card that was supposed to be a unique identifier for the leads specifically generated by Defendant for Securus.

40. The foregoing representations were material to the parties' business relationship and to Securus's ultimate decision to execute the Agreement.

41. Securus relied upon Defendant's foregoing representations in deciding to execute the Agreement and move forward with a business relationship with Defendant.

42. Securus's reliance upon Defendant's foregoing representations was reasonable.

43. Defendant knew the foregoing representations to be false at the time they were made and intended for Securus to rely upon said representations in order to induce Securus to execute the Agreement.

44. As a result of Defendant's wrongful acts and omissions, as described and complained of herein, Securus has been damaged.

**WHEREFORE**, Securus hereby demands judgment against Defendant for:

    a. consequential damages;

    b. compensatory damages;

    c. punitive damages;

    d. costs of suit and attorneys fees; and,

    e. such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Securus hereby demands a trial by jury on all triable issues of fact raised herein.

                                      **GARLAND & MASON, L.L.C.**
                                      **Attorneys for Securus**

                                 BY:   /s/   Gary L. Mason              .
                                         Gary L. Mason

Dated: February 24, 2016